UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON PRICE and CLINTON SHAW, Individually and on Behalf of Those Similarly Situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:19-CV-0742-B |
| SANTANDER CONSUMER USA INC., | § § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Santander Consumer USA Inc.'s Motion to Compel Individual Arbitration (Doc. 13). For the reasons that follow, the Court **GRANTS** Defendant's Motion to Compel Individual Arbitration.

### I.

### BACKGROUND

This is a collective action under the Fair Labor Standards Act (FLSA). Plaintiffs Jason Price and Clinton Shaw allege that Defendant Santander Consumer USA Inc. violated the FLSA by failing to pay Plaintiffs, and those similarly situated, for overtime work. Doc. 1, Pls.' Compl., ¶¶ 33–35, 40. Defendant employs individuals as Resolution Specialists and treats them as exempt salaried employees. Doc. 16, Def.'s Answer, ¶¶ 14, 23. Plaintiffs allege that, as Resolution Specialists, they were paid by the hour, and they regularly worked more than forty hours per week. Doc. 1, Pls.' Compl., ¶¶ 23–24. Despite this overtime work, however, Plaintiffs claim that Defendant failed to pay

-1-

Plaintiffs one and one-half times their regular rate in violation of 29 U.S.C. § 207. *Id.* at ¶ 33. Accordingly, Plaintiffs bring this collective action on behalf of themselves and all other similarly situated employees of Defendant. *Id.* at ¶ 40.

Thereafter, Defendant filed a Motion to Compel Individual Arbitration (Doc. 13). Plaintiffs filed a Response (Doc. 18), and Defendant filed a Reply (Doc. 21), as well as a Supplemental Appendix to its Motion (Doc. 23). Subsequently, Plaintiffs obtained leave of Court to file a sur-reply to Defendant's Motion (Doc. 27). The Motion is now ripe for the Court's review.

## II.

## LEGAL STANDARD

In enacting the Federal Arbitration Act (FAA), "Congress . . . expressed a strong policy favoring arbitration before litigation . . . ." *J.S. & H. Constr. Co. v. Richmond Cty. Hosp. Auth.*, 473 F.2d 212, 214–15 (5th Cir. 1973). Under the FAA, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Fifth Circuit follows a two-step procedure to decide whether to compel arbitration: (1) "determine whether the parties agreed to arbitrate the dispute in question," and (2) determine whether any external legal constraints preclude arbitration of the dispute. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996) (per curiam). A party seeking to compel arbitration must only prove the existence of an agreement by a preponderance of the evidence. *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012) (per curiam).

Moreover, to determine if evidence in support of a motion to compel arbitration is admissible, courts apply a similar standard as that applied to a motion for summary judgment. *Galitski v. Samsung Telecomm. Am., LLC*, 2013 WL 6330645, at *1 n.1 (N.D. Tex. Dec. 5, 2013). That is, the evidence must comply with the Federal Rules of Evidence and be based on personal knowledge. *Id.*

**III.**

**ANALYSIS**

Defendant moves the Court to compel individual arbitration and dismiss the lawsuit with prejudice. Doc. 21, Def.'s Reply to Pls.' Resp. to Def.'s Mot. Compel Indiv. Arbitration, 10. Since the parties dispute both the existence of an arbitration agreement and whether Plaintiffs may proceed collectively, the Court will address: (1) whether to compel arbitration of the claims; (2) whether Plaintiffs must arbitrate individually; and (3) whether to dismiss or stay the case.

A.  *Whether to Compel Arbitration of the Claims*

First, the Court must determine whether the parties agreed to arbitrate the dispute at issue by considering whether the parties have a valid agreement to arbitrate and whether the dispute falls within the scope of the agreement. *Webb*, 89 F.3d at 258. If the answer to both of those questions is yes, then the Court must consider whether any external legal constraints foreclose arbitration. *Id.* Neither party contends that the dispute falls outside the scope of the alleged arbitration agreement, nor that external legal constraints foreclose arbitration. Thus, the Court focuses solely on the existence of a valid arbitration agreement.

To compel arbitration, a party must prove the existence of an arbitration agreement by a preponderance of the evidence. *Grant*, 469 F. App'x at 315. And "[i]n determining the contractual

validity of an arbitration agreement, courts apply ordinary state-law principles that govern the formation of contracts." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Under Texas law, there is "no presumption in favor of arbitration when determining whether a valid arbitration agreement exists." *Huckaba v. Ref–Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018). Rather, the party seeking to compel arbitration must establish that the alleged agreement satisfies the requisite elements of a binding contract. *Id.* And "because the validity of the agreement is a matter of contract, at this stage, the strong federal policy favoring arbitration does not apply." *Id.* at 688–89.

"[A] binding contract requires '(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding.'" *Coffel v. Stryker Corp.*, 284 F.3d 625, 640 n.17 (5th Cir. 2002) (quoting *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio, 1999)). Moreover, a signature is not required to bind the parties to a contract unless the parties intended to require a signature. *Huckaba*, 892 F.3d at 689.

To demonstrate the existence of a binding contract, Defendant offered documentation of Defendant's Arbitration Policy ("Policy"). Doc. 15, App. in Supp. of Def.'s Mot. to Compel Arbitration, Ex. C. The Policy, in relevant part, states:

> The Company [Defendant] and the Associate agree to submit to binding arbitration any dispute, claim, or controversy that may arise between Associate and the Company arising out of or in connection with the Company's business, the Associate's employment with the Company, or the termination of Associate's employment with the Company.
>
> This Arbitration Policy is intended to broadly cover the entire relationship between Associate and Company . . . .

*Id.* Defendant also provided exhibits resembling web-pages ("Acknowledgment Exhibits"), each of which contains headings titled "Training Details" and "Arbitration Policy." Doc. 15, App. in Supp. of Def.'s Mot. to Compel Arbitration, Ex. B. Both Acknowledgment Exhibits indicate, "Acknowledgment is completed" below the "Training Details" heading. *Id.* Additionally, each states, "Completed by Jason Price" and "Completed by Clinton Shaw," respectively. *Id.* Finally, each Acknowledgment Exhibit contains a date and time stamp beside the indication that "Acknowledgment is completed." *Id.*

In conjunction with these Acknowledgment Exhibits, Defendant provided a declaration ("Declaration I") from Breyana Penn, a human resources consultant for Defendant. Doc. 15, App. in Supp. of Def.'s Mot. to Compel Arbitration, Ex. A. In Declaration I, Penn indicates that the exhibits are documents created and maintained by Defendant in the usual course of business; it was the regular course of business of Defendant for an employee with knowledge of the events recorded to make these records; the records were made at or near the time the events described; and the records are exact duplicates of the originals. *Id.* Accordingly, based on Declaration I, these documents qualify as business records. *See* FED. R. EVID. 803(6).

In response, Plaintiffs contend that this evidence is insufficient to demonstrate the existence of a valid contract, because the evidence fails to show that Plaintiffs were "made aware" of the Policy. Doc. 18, Pls.' Resp. to Def.'s Mot. to Compel Indiv. Arbitration, 8. Consequently, Plaintiffs suggest, Defendant failed to prove an offer, acceptance, and meeting of the minds between Defendant and Plaintiffs; therefore, Defendant did not demonstrate the existence of a binding agreement. *Id.*

Thereafter, Defendant offered another declaration from Penn ("Declaration II"). Doc. 23, Suppl. App. in Supp. of Def.'s Mot. to Compel Arbitration, Ex. E. In Declaration II, Penn provides context for Defendant's Acknowledgment Exhibits. *Id.* Specifically, Penn explains how Defendant's employees are required to log-in, with a unique username and password, to Defendant's "SB Learn Portal" on their computers to access and review each company policy. *Id.* ¶¶ 1–2. After an employee reviews a policy and closes the window, the employee must click a button acknowledging that he has reviewed the policy. *Id.* ¶ 3. The date and time for each acknowledgment is electronically recorded, as illustrated by the date and time stamps on each Acknowledgment Exhibit. *Id.* ¶¶ 4–5. Finally, Penn clarified that the policy reviewed by each Plaintiff is the Policy offered by Defendant. *Id.* ¶ 8.

The Court finds that Defendant has established, by a preponderance of the evidence, the existence of an arbitration agreement. As a preliminary matter, Penn's Declarations are based upon her personal knowledge and comply with the Federal Rules of Evidence. Accordingly, they are proper evidence for a motion to compel arbitration. *Galitski*, 2013 WL 6330645, at *1 n.1. And because the Acknowledgment Exhibits qualify as business records, they do not violate the rule against hearsay. *See* FED. R. EVID. 803(6).

Specifically, the Court concludes that the Acknowledgment Exhibits, coupled with the Policy and Penn's Declarations, are sufficient to establish the existence of a contract. Defendant's use of the SB Learn Portal, which prompts employees to review the Policy and acknowledge it, constitutes an offer of the terms of the Policy. Next, the text on the Acknowledgment Exhibits, indicating that each Plaintiff "[c]ompleted" the "Acknowledgment," alongside an electronic date and time stamp, demonstrates an acceptance of the terms by each Plaintiff; a meeting of the minds between

Defendant and each Plaintiff; consent; and execution and delivery of the contract. The Court therefore finds that Defendant has proven the elements of a binding contract. *See Coffel*, 284 F.3d at 640 n.17.

Finally, Plaintiffs failed to offer evidence that the parties intended the contract to be binding only after obtaining signatures from each party. There is no language in the Policy suggesting that the parties intended to require signatures to create a binding contract. *Cf. Huckaba*, 892 F.3d at 689 (finding that parties expressly intended to require signatures where the arbitration agreement between them contained language necessitating signatures to give effect to the agreement). Rather, in Declaration II, Penn testifies that each employee is required only to click on a button to acknowledge receipt of the Policy. Doc. 23, Suppl. App. in Supp. of Def.'s Mot. to Compel Arbitration, Ex. E, ¶ 3. Thus, the Court concludes that there was a valid arbitration agreement between Defendant and Plaintiffs.[1]

B.  *Whether Plaintiffs Must Arbitrate Individually*

Next, the Court considers whether Plaintiffs must arbitrate individually or whether they may arbitrate collectively. The FAA mandates that courts enforce arbitration agreements according to their terms. *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) (citing 9 U.S.C. § 2). In enforcing or construing an arbitration clause, courts must "give effect to the contractual rights and expectations of the parties . . . ." *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Further, courts are bound by the principle that consent to arbitration is

---

[1] The Court need not consider Defendant's submitted email communications (Doc. 20) between counsel, as the Court finds the remaining evidence sufficient to establish the existence of a contract.

essential—"arbitrators wield only the authority they are given." *Lamps Plus, Inc.*, 139 S. Ct. at 1416. Based on this principle, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) (emphasis in original).

Defendant contends that the Policy fails to address class or collective proceedings; rather, it considers only bilateral arbitration. Doc. 21, Def.'s Reply to Pls.' Resp. to Def.'s Mot. Compel Indiv. Arbitration, 7. For example, Defendant points out that the Policy applies to claims that arise "between Associate and the Company." Doc. 15, App. in Supp. of Def.'s Mot. to Compel Arbitration, Ex. C. Further, Defendant suggests that there is no legally significant difference between class actions and collective actions in the arbitration context—the same concerns underlying class-wide arbitration apply in collective arbitration. Doc. 21, Def.'s Reply to Pls.' Resp. to Def.'s Mot. Compel Indiv. Arbitration, 6–8.

Plaintiffs, on the other hand, argue that the Policy contemplates collective arbitration, because the Policy covers "any dispute, claim, or controversy that may arise between Associate and the Company arising out of or in connection with the Company's business . . . ." Doc. 15, App. in Supp. of Def.'s Mot. to Compel Arbitration, Ex. C.; Doc. 18, Pls.' Resp. to Def.'s Mot. to Compel Indiv. Arbitration, 8–9. Since this language does not limit arbitrable claims to those in connection with the Associate's employment, Plaintiffs contend, the language is broad enough to encompass class and collective actions. *Id.* Additionally, Plaintiffs suggest that even if the Policy is ambiguous regarding class and collective arbitration, this ambiguity does not bar collective arbitration in the same way that it would bar class-wide arbitration. *Id.* at 13.

Plaintiffs' arguments, however, are contrary to Supreme Court and Fifth Circuit precedent. Though "an agreement to submit to class arbitration may be implicit, it should not be lightly inferred." *Reed v. Fla. Metro. Univ. Inc.*, 681 F.3d 630, 640–41 (5th Cir. 2012), *abrogated on other grounds by Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013). For example, an agreement to arbitrate, standing alone, cannot give rise to an inference that the parties had an implicit agreement to authorize class-action arbitration. *Stolt–Nielsen S.A.*, 559 U.S. at 685. Thus, where the parties to a dispute "concurred that they had reached 'no agreement'" regarding class arbitration, the parties could not be bound to class arbitration. *Id.* at 684, 687. Likewise, an arbitration clause covering "any dispute" between parties is insufficient to establish an implicit agreement to authorize class arbitration. *Reed*, 681 F.3d at 632, 642; s*ee also Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013) (concluding that an arbitration clause covering "any controversy, claim, or counterclaim" did not authorize classwide arbitration). Rather, this is a routine clause that "merely reflects an agreement between the parties to arbitrate their disputes." *Reed*, 681 F.3d at 642.

Additionally, courts cannot force parties subject to an ambiguous arbitration agreement to submit their dispute to class arbitration—the FAA "requires more than ambiguity to ensure that the parties actually agreed to arbitration on a classwide basis." *Lamps Plus, Inc.*, 139 S. Ct. at 1415. When determining arbitrability, courts generally apply state-law contract principles. *First Options of Chicago, Inc.*, 514 U.S. at 944. Under Texas contract law, a contract is ambiguous if its language "is subject to two or more reasonable interpretations . . . ." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam).

Based on binding precedent, the Court rejects Plaintiffs' arguments and finds that the Policy fails to evidence an agreement to arbitrate class or collective actions. First, the language of the Policy does not demonstrate the parties' agreement to arbitrate class or collective claims: The text of the Policy makes no reference to class or collective arbitration. *See* Doc. 15, App. in Supp. of Def.'s Mot. to Compel Arbitration, Ex. C. In addition, although the Policy governs "any dispute, claim, or controversy," this language is insufficient to show an agreement to arbitrate class proceedings. *Reed*, 681 F.3d at 632, 642. Moreover, the Policy states that the "decision of the arbitrator shall be binding . . . on the Company and the Associate"—suggesting bilateral arbitration. Doc. 15, App. in Supp. of Def.'s Mot. to Compel Arbitration, Ex. C. Although the Policy covers claims "in connection with the Company's business," this language is, at best, evidence of ambiguity in the Policy's treatment of class and collective claims. And ambiguity alone is insufficient for the Court to imply an agreement to arbitrate class-action claims. *Lamps Plus, Inc.*, 139 S. Ct. at 1415.

Further, the Court finds that collective actions are indistinguishable from class actions for arbitration purposes, because many concerns inherent in class arbitration persist in collective arbitration.[2] Class arbitration involves the resolution of the disputes of numerous individuals— perhaps hundreds. *Stolt–Nielsen S.A.*, 559 U.S. at 686. Likewise, a collective action involves numerous plaintiffs. Due to the number of disputes, class arbitration is slower, more expensive, and procedurally more complicated than individual arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011). Similarly, in collective arbitration, these efficiency concerns remain. Finally,

---

[2] The Court recognizes that there are some significant differences between Rule 23 class actions and collective actions, as noted by other courts. *See, e.g.*, *Int'l Bancshares Corp. v. Lopez*, 57 F. Supp. 784, 788 (S.D. Tex. 2014); *Mork v. Loram Maintenance of Way, Inc.*, 844 F. Supp. 950, 956 (D. Minn. 2012). But these differences do not outweigh the similarities here.

a defendant faces a relatively low cost of error in individual arbitration, because the impact of an arbitrator's error "is limited to the size of individual disputes." *Id.* at 350. But the defendant arbitrating a class action faces higher stakes, as an arbitrator's error could prove far more costly when arbitrating a multitude of disputes. *See id.* at 350. Since collective actions involve numerous plaintiffs, the defendant faces higher stakes in arbitrating collective actions than in arbitrating individual claims. Due to these concerns, which arise in both class-wide and collective arbitration, Defendant's Motion to Compel Individual Arbitration is hereby **GRANTED**.

C.    *Whether to Dismiss or Stay the Case*

Finding arbitration appropriate in this case, the Court next considers whether to stay or dismiss the proceedings pending the outcome of arbitration. The FAA provides that "upon any issue referable to arbitration under an agreement," the court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. Nonetheless, "[t]he weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis in original). And the district court has wide discretion in deciding whether to stay proceedings or dismiss a case. *See Apache Bohai Corp. v. Texaco China*, 330 F.3d 307, 311 n.9 (5th Cir. 2003).

Defendant seeks a dismissal with prejudice, pointing out that if the Court compels arbitration, no other issues remain for the Court to decide. Doc. 21, Def.'s Reply to Pls.' Resp. to Def.'s Mot. Compel Indiv. Arbitration, 11. Plaintiffs, on the other hand, seek a stay of the proceedings. Doc. 18, Pls.' Resp. to Def.'s Mot. to Compel Indiv. Arbitration, 13. But if the Court dismisses the case,

Plaintiffs desire a dismissal without prejudice. *Id.* Nevertheless, while they acknowledge the Court's discretion to stay or dismiss the case, Plaintiffs have not identified an issue that will remain after the Court compels arbitration. *See id.* Thus, the Court **DISMISSES** the case **WITH PREJUDICE**.

**IV.**

**CONCLUSION**

For the forgoing reasons the Court **GRANTS** Defendant's Motion to Compel Individual Arbitration, Doc. 13, and **DISMISSES** the case **WITH PREJUDICE**. The Clerk of Court is directed to administratively close the case.

**SO ORDERED**.

**SIGNED: September 12, 2019.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE